# In the United States Court of Federal Claims

| | |
|---|---|
| REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL RESPONSE TRUST AND RACER PROPERTIES LLC, | No. 23-192 C |
| *Plaintiffs,* | (Filed: March 19, 2024) |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

Roger J. Marzulla, Marzulla Law, LLC, Washington, DC, for plaintiff.

Amanda L. Tantum, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying the Government's Motion to Dismiss the Complaint**

**SILFEN,** *Judge*.

Plaintiffs, Revitalizing Auto Communities Environmental Response Trust and RACER Properties LLC (collectively, RACER) were sued by postal workers in Michigan state court for harms from conditions at a post office facility. RACER asks this court to order the government to pay for the costs of that Michigan suit, and any future judgment in that suit, under indemnity provisions in a pair of contracts between RACER and the United States Postal Service. The government moves to dismiss the complaint for lack of standing, lack of jurisdiction, and failure to state a claim. This court **denies** the government's motion to dismiss.

**I.    Background**

    **A.    The contracts**

In 2004, General Motors, RACER's predecessor in interest, entered into a master agreement and a ground lease with the United States Postal Service.[1] ECF No. 1 at 4 [¶6]. Under those

---

[1] In 2011, a U.S. Bankruptcy Court made RACER the assignee and successor in interest to all of General Motors' rights and obligations under these two agreements. ECF No. 1 at 4 [¶6].

1

two contracts, the Postal Service would use land in Michigan owned by General Motors for a Postal Service processing and distribution center. *Id*. The center would be called "the Metroplex." *Id*. At the time of the agreements, General Motors was actively working with the United States Environmental Protection Agency to decontaminate the land. *Id.* at 4 [¶¶5, 7].

The contracts both require General Motors—and then RACER—to undertake the EPA cleanup process, while the Postal Service has responsibility for constructing and using the Metroplex processing center. *See* ECF No. 1 at 4-5 [¶¶5-7]; *see also generally* ECF No. 1-2 (master agreement); ECF No. 1-3 (ground lease).

The master agreement makes the Postal Service "solely responsible for all conditions" of the property "except for the Environmental Condition[s]." ECF No. 1-2 at 16-17 [art. 2(k)]. Under the contracts, the capitalized term "Environmental Conditions" refers to "pre-existing contamination that [RACER] was responsible to clean up" from earlier use of the land that was "not caused by, contributed to, or exacerbated" by the Postal Service after 2004. ECF No. 1 at 10 [¶17]; ECF No. 1-2 at 7-9 [art. 2(c)-(d)].

Each contract also contains an indemnity clause. In the master agreement,

> Subject to those federal laws that specifically restrict [the Postal Service]'s indemnity obligations, [the Postal Service] shall indemnify and hold [RACER] … harmless from and against any and all losses, damages, claims, penalties, fines, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses), arising directly or indirectly from any environmental condition (and the physical condition of the Property that affects any environmental condition on the Property), except for the Environmental Conditions. The foregoing indemnification by [the Postal Service] (excluding the Environmental Conditions) includes, without limitation, costs incurred in connection with any investigation of site conditions or any cleanup, remedial, removal or restoration work required by any federal, State, or local governmental agency or political subdivision.

ECF No. 1-2 at 22-23 [art. 3(a)].

Similarly, in the ground lease agreement,

> [The Postal Service] shall indemnify and hold [RACER] … harmless from loss, damage, claim, liability, and cost (including reasonable attorneys' fees and disbursements) arising from (a) any default, breach or violation by [the Postal Service] under this Lease, or (b) any damage to any property or injury to or death of any person arising from or in connection with the use of the Premises by [the Postal Service], except such as is caused by the willful misconduct or gross negligence of [RACER], its employees or contractors. To the extent that [RACER] recovers under the liability insurance carried pursuant to the requirements of this Lease, [the Postal Service] is hereby released from this indemnification to the extent of such proceeds.

ECF No. 1-3 at 12 [art. 10.1]. Each agreement also includes a provision under which RACER indemnifies the Postal Service for certain costs. ECF No. 1-2 at 22 [art. 3(a)] (master agreement); ECF No. 1-3 at 12-13 [art. 10.2] (ground lease).

The Metroplex began operations in 2008. ECF No. 1 at 5 [¶8]. Eight years later, in 2016, the Postal Service's Office of Inspector General investigated the Metroplex's methane detection and collection system and published a report, noting a problem and recommending improvements. *Id.* at 5 [¶9].

### B.     The Michigan lawsuit

In 2018, several Postal Service employees who worked at the Metroplex sued RACER in a toxic tort action in Michigan state court. *See Powell-Murphy, et al., v. Revitalizing Auto Cmtys. Env't Response Tr.*, No. 18-168037-NO, 2018 WL 11206193 (Mich. Cir. Ct. Aug. 24, 2018). In their complaint, the employees sought relief for injuries "suffered as a result of [RACER's] wrongful emissions of toxic chemicals, including, but not limited to methane gas … and other toxic and hazardous substances" at the Metroplex. *Id.*

The Michigan court initially granted RACER's motion for summary judgment and dismissed the case, concluding that the Postal Service employees "failed to establish how [RACER was] responsible for the working conditions in a building, constructed and operated by their employer," the Postal Service. *Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.*, No. 18-168037-NO, 2019 WL 10744920 (Mich. Cir. Ct. Apr. 11, 2019).

The employees appealed, and the Michigan Court of Appeals reversed and remanded, ordering discovery on both causation and whether the employees could be certified as a class. *Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.*, 333 Mich. App. 234 (2020). On remand, the trial court granted the Postal Service employees' motion to certify the class action. *See* Docket in No. 18-168037-NO (Dec. 19, 2022); ECF No. 1 at 6-7 [¶12]. That action is still pending in the trial court. Hearing Tr. 49:19-50:3, Jan. 23, 2024. Trial is set for June 2025. *Id.* at 49:23-50:1.

RACER states that, as of November 2021, it had incurred $193,971.73 in legal fees and expenses from defending the Michigan suit. ECF No. 1 at 7 [¶13]. RACER continues to incur expenses as the case proceeds. *Id.* As of January 2024, the legal fees totaled between $365,000 and $375,000. Hearing Tr. 33:12-14.

### C.     RACER's demands for indemnity

In May 2021, RACER sent a demand letter to the Postal Service requesting indemnification for its attorneys' fees, costs, and expenses from defending the Michigan suit. ECF No. 1 at 11 [¶20]. The Postal Service rejected the demand. *Id*.

That December, RACER submitted a formal demand to the contracting officer under the Contract Disputes Act (CDA). ECF No. 1-7. RACER asked the Postal Service to "agree to a modification of the lease payment terms to include the amount incurred to date in the defense of the Litigation and future amounts incurred in the defense of the Litigation as an equitable adjustment to the ground lease." *Id.* at 18. The contracting officer rejected the demand. ECF No. 1-8.

3

RACER then supplemented its December 2021 demand letter. ECF No. 1-9. The contracting officer again rejected RACER's demands for indemnification and amendment to the lease payment terms. ECF No. 1-10.

RACER appealed the contracting officer's decision to the Postal Service Board of Contract Appeals. ECF No. 6-1 at Appx9-11. Both RACER and the Postal Service now agree that the appeals board lacks jurisdiction and have jointly moved for dismissal without prejudice. ECF 6-1 at Appx22-23. The appeals board has not yet ruled on that motion. Hearing Tr. 8:13-9:3.

In February 2023, RACER sued the Postal Service in this court for breach of contract. ECF No. 1.

## II. Discussion

RACER seeks (1) equitable adjustment of the lease to pay for legal fees and expenses it has already incurred, plus all future fees, costs, and expenses of defending the Michigan class action; and (2) a declaration that RACER is indemnified by the Postal Service not only for any ultimate judgment, but also for attorneys' fees, costs, and expenses. ECF No. 1 at 15. In the alternative, RACER requests damages for at least the $193,971.73 it sustained as of the date it began the formal CDA process. *Id.* at 16.

The government moves to dismiss RACER's complaint for lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted. ECF No. 6; *see* RCFC 12(b)(1), 12(b)(6).

After the motion to dismiss was briefed, RACER moved for leave to file a surreply, ECF No. 14, which the government opposed, ECF. No. 15. That motion is pending here as well.

To establish constitutional standing under Article III, the party invoking federal jurisdiction has the burden to demonstrate three elements: (1) an injury in fact; (2) causation between the injury and the conduct at issue; and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing must be established "for each claim [a plaintiff] seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quotation marks omitted). The three prongs of the standing test "are not mere pleading requirements" and "each element must be supported in … the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. When reviewing standing on a motion to dismiss, the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quotation marks omitted).

The Court of Federal Claims is an Article I court, but it "applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States,* 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); *see also* 28 U.S.C. § 2519 (allowing this court to enter final judgments that "forever bar any further claim, suit, or demand against the United States arising out of the matters involved in the *case or controversy*" (emphasis added)).

On a motion to dismiss for lack of jurisdiction under rule 12(b)(1) of the rules of this court "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d

4

1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

This court's jurisdiction is primarily defined by the Tucker Act; the court has exclusive jurisdiction to decide specific types of monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1). The Tucker Act provides this court with "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under the [CDA], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA]." 28 U.S.C. § 1491(a)(2).

Under the CDA, this court has jurisdiction "over a contractor's request for relief only when the appeal or action is based on a qualifying claim filed by the contractor and a final decision by the contracting officer." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999); *see England v. Swanson,* 353 F.3d 1375, 1379 (Fed. Cir. 2004) (holding that the requirements of the CDA are jurisdictional prerequisites to appeal).

On a motion to dismiss for failure to state a claim under rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257 and *Iqbal*, 556 U.S. at 679).

### A.   RACER has alleged sufficient facts to show that it has standing

The government argues that RACER has failed to establish the injury element of standing. An injury in fact is "an invasion of a legally protected interest" and must be both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). The government argues that RACER has not shown that it incurred the current monetary injury it alleges, and that RACER cannot show an injury for the future costs and a possible future judgment in the Michigan case.[2] ECF No. 6 at 8-12. While the government acknowledges that litigation costs have been incurred in the Michigan suit, it contends that RACER's insurer, AIG, not RACER, paid those costs. ECF No. 6 at 10-11 (citing "Exhibit M," ECF No. 6-1 at Appx12-13).

---

[2] The terms "costs," "expenses," "fees," and "attorneys' fees" have different meanings. *See generally Peter v. NantKwest*, 140 S. Ct. 365 (2019); *Hyatt v. Hirshfeld*, 16 F.4th 855 (Fed. Cir. 2021). For purposes of this decision, the court is at times using the word "costs" as a shorthand for all of those different sums.

RACER disagrees that litigation costs covered by insurance cannot be recovered under an indemnity. ECF No. 10 at 16-18. Regardless, RACER argues that the costs covered by insurance do not account for all of RACER's litigation costs. *Id*. RACER explains that RACER itself, not any insurer, paid $50,277.25 of its total bill. *Id.* RACER supports its statement with the declaration of its general counsel, Carl Garvey. ECF No. 10-1. Mr. Garvey states that RACER satisfied its insurance deductible by paying $50,277.23 for representation in the case. *Id*. at 3 [¶7].

The government acknowledges that for purposes of standing on this motion to dismiss, the declaration "suffices to show harm in the amount of $50,277.23." ECF No. 13 at 8; Hearing Tr. at 4:21-5:3.

The court agrees. Regardless of whether the amount covered by insurance may also be covered by an indemnification clause, RACER has plausibly alleged that it has paid $50,277.25 in litigation costs and therefore has sustained an injury in the Michigan lawsuit. RACER has sufficiently established standing at this stage of the proceedings for the costs it has incurred.

The government also argues that RACER lacks standing to seek prospective relief for costs it may incur in the Michigan litigation because RACER has not established that there is a substantial likelihood that RACER will suffer that injury in the future. ECF No. 6 at 11-12 (citing *Mack v. USAA Cas. Ins. Co*., 994 F.3d 1353, 1357 (11th Cir. 2021)); *see also O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). That is not a reason to dismiss the case. RACER has established, and the government does not dispute, that the employees' suit is pending in Michigan state court. As the case progresses, litigation costs will continue to accrue. While no one knows the scope and amount of those costs, and the court is not deciding here whether insurance affects the amount that is attributable to RACER, at this stage of the proceedings, the court will not dismiss on those grounds.

### B. RACER has sufficiently alleged that the court has subject-matter jurisdiction

The government argues that this court lacks subject-matter jurisdiction over RACER's claims for relief "other than payment of the alleged $193,971.73 in attorneys' fees and any interest accrued since November 30, 2021." ECF No. 6 at 31. In the government's view, (1) RACER cannot seek an equitable adjustment of the master agreement's terms because RACER asked the contracting officer to adjust only the ground lease (*id*. at 30-31); (2) the ground lease is irrelevant because it was terminated when the Postal Service bought the property (*id*. at 36-37); and (3) this court is not authorized to grant declaratory relief for future litigation costs and a possible future judgment (*id*. at 31-36). I disagree.

#### 1. Equitable adjustment of the master agreement

The government argues that RACER did not seek an equitable adjustment of the master agreement's terms from the contracting officer and therefore has not met the jurisdictional prerequisites under the CDA to bring a complaint in this court. ECF No. 6 at 29-31. The claim presented to this court must be the "same claim," with the same elements and remedies sought, as the claim presented to the contracting officer. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 776 (Fed. Cir. 2021). RACER responds that it did in fact request an equitable adjustment of both the ground lease and master agreement from the contracting officer. ECF No. 10 at 20-23. RACER cites its December 2021 claim letter requesting an "Equitable Adjustment under a Master Agreement and

6

Ground Lease" (ECF No. 1-7 at 1) and the contracting officer's response acknowledging the letter (ECF No. 1-8 at 1). ECF No. 10 at 21-22. The government replies that requesting equitable adjustment "under" the master agreement is not the same as requesting an adjustment of the master agreement's terms, which RACER's complaint seeks. ECF No. 13 at 19-20.

Any differences between the claim submitted to the contracting officer and the one requested in RACER's complaint do not preclude this court's review. The initial claim "must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim," but the two claims need not be identical. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (marks omitted). The focus of the court's review is whether the contracting officer had "an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *Id.* at 1006; *Tolliver*, 20 F.4th at 776.

Here, the wording of the two claims is not identical. But the contracting officer had notice of the basis of relief (equitable relief, under both contracts) and the amount RACER sought ($193,071.73) from RACER's December 2021 claim. ECF No. 1-7. The contracting officer had an opportunity to, and did, rule on the substantive issue of RACER's request for equitable adjustment and enforcement of its "indemnification rights under the master agreement and ground lease." ECF No 1-8 at 2-3.

The two claims are essentially the same. The differences between RACER's claims before the contracting officer and its claims here do not "subvert the statutory purpose [of the CDA] of requiring contractors first to submit their claims to the contracting officer." *Croman Corp. v. United States*, 44 Fed. Cl. 796, 801-02 (1999); *see Scott Timber Co. v. United States*, 333 F.3d 1358, 1365-66 (Fed. Cir. 2003) (finding the two claims sufficiently the same even when the contractor raised slightly different legal arguments because the basic underlying theory was the same, the category of damages was same, and both arose from the same set of operative facts); *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 419 (1987) (finding claims to be the same where any differences between the two did not change the basis of the contractual relationship, the amount requested, and the purposes for which that relief was sought); *cf. K-Con Bldg. Sys.*, 778 F.3d at 1006 (explaining that claims have been distinguished when they seek different types of remedies, such as expectation damages versus consequential damages).

### 2. Mootness

Relatedly, the government argues that RACER's request for equitable adjustment of the ground lease terms is moot because the contract ended once the Postal Service bought the property. ECF No. 6 at 36-37. RACER responds that the indemnity provision is one of the "liabilities and obligations" that "survive the expiration or termination" of the ground lease. ECF No. 10 at 24-25 (quoting the ground lease, ECF No. 1-3 at 27 [art. 21.3(b)]). The government replies that the indemnity provision may have survived, but RACER actually seeks to adjust the rental payment terms, which did not survive the lease's termination. ECF No. 13 at 19.

A case becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (marks omitted).

The court will not dismiss this case as moot. The ground lease states that the indemnification obligations survive the lease's termination. Although rental payments ended, a later equitable adjustment can still reflect any liabilities that might arise from the surviving indemnification claim. *See Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1378-79 (Fed. Cir. 2022) (holding that the case was not moot because an award of bid preparation and proposal costs related to a terminated contract could be awarded).

Even if the particular issue were moot, other live issues remain that can "supply the constitutional requirement of a case or controversy," and thus, the case cannot be dismissed as moot. *Powell*, 395 U.S. 497; *see, e.g.*, *Mitchco*, 26 F.4th at 1378-79 (holding that an order enjoining performance of a terminated contract was moot, but other forms of relief related to that terminated contract could be awarded if the contractor was successful on the merits).

### 3. Declaratory relief

The government argues that this court does not have authority to issue a declaration stating that RACER is entitled to indemnification from the Postal Service of future attorneys' fees, future costs, future expenses, or any future judgment against RACER in the Michigan suit. ECF No. 6 at 31-36. RACER argues that the declaratory judgment it seeks falls within the limited circumstances in which this court has jurisdiction over nonmonetary claims and that the government's argument is largely a merits issue. ECF No. 10 at 23-24.

While this court has limited jurisdiction, *see Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998), declaratory relief is available in CDA cases, *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999); *see also Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011). This court can grant declaratory relief in cases involving contract performance related to a fundamental question of contract interpretation or in cases that require the early resolution of a legal issue. *Alliant*, 178 F.3d at 1271; *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1361 (Fed. Cir. 2018) (abrogated on other grounds). The court also retains jurisdiction over nonmonetary claims when they are a "substitute for monetary relief." *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 750-51 (Fed. Cir. 1993).

There is a difference between jurisdiction to entertain a complaint and "whether the court should grant that relief on the merits and what form such relief should take." *Alliant*, 178 F.3d at 1270. At this stage of the proceedings, the court need only decide its jurisdiction.

RACER's requested declaratory relief relates to a question of contract interpretation—the indemnification provision—and performance obligations—payment of costs related to the parties' obligations and liabilities. Thus, the court can consider whether declaratory relief may be appropriate in this case. *See Alliant*, 178 F.3d at 1270-71 (The Court of Federal Claims "is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interest.").

### 4. Additional arguments

The government raises a few additional arguments. It argues that the court lacks jurisdiction to award attorneys' fees in this suit, beyond those allowed by the Equal Access to Justice Act,

8

28 U.S.C § 2412 and 28 U.S.C § 1920, and that the court should dismiss RACER's request for any compensation beyond the scope of those statutes. ECF No. 6 at 38-39; ECF No. 13 at 20. RACER argues that attorneys' fees and costs in this suit fall under the Equal Access to Justice Act, as well as under the terms of the master agreement. ECF No. 10 at 25-26 & n.112. The court need not address attorneys' fees in this suit at this stage of the proceedings.

The government also asserts that this court may lack jurisdiction because RACER filed an appeal, which remains pending, at the Postal Service Board of Contract Appeals. ECF No. 6 at 39-40. A party may appeal a contracting officer's final decision to the appeals board, or this court, but not both. *Bonneville Assocs. v. United States*, 43 F.3d 649, 653 (Fed. Cir. 1994) (explaining the election doctrine). When one forum lacks jurisdiction, "no true choice of forum is available," so any election of that forum does not count. *Id.* Here, both parties have agreed that the appeals board lacks jurisdiction and have jointly moved to withdraw that case. ECF No. 10 at 26. Although the appeals board has not decided the joint motion, neither party believes the appeals board has jurisdiction. As of January 2024, the parties were still unsure when the appeals board would issue its decision, but they do not have a reason to believe that the board will rule against the joint motion. Hearing Tr. 9:4-6; *see also id.* at 53:16-21, 54:3-13.

At the oral argument, the government argued that there needs to be a final appeals board decision before this court can exercise jurisdiction. Hearing Tr. at 9:6-11 (citing *Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539 (Fed. Cir. 1988)). Having a final determination would make resolution of this question more straightforward, but that is not what the law requires. "Prior to the board determining whether … the board has jurisdiction and can resolve the dispute, it is not possible to determine … whether [the appealing party] has made a binding election to choose the board for resolution of its dispute with the contracting officer." *Nat'l Neighbors*, 839 F.2d at 1543 (emphasis omitted). Dismissing a suit in this court before the appeals board determines whether it has jurisdiction would be "premature." *States Roofing Corp. v. United States*, 70 Fed. Cl. 299, 301 (2006). Because here both parties agree that the appeals board lacks jurisdiction, RACER has not made a binding election of the appeals board to resolve this dispute. At this stage of the proceedings, the best course is to proceed with the case. The parties may want to check in with the appeals board about the status of their request for dismissal before this case is closer to a final decision.

### C. RACER has pleaded a plausible claim for relief

The government argues that RACER has failed to state a plausible claim for relief. ECF No. 6 at 12-28. In the government's view, RACER cannot assert an indemnification claim for litigation costs in the ongoing Michigan lawsuit because the duty to indemnify is not ripe until there is a judgment or settlement in the underlying lawsuit. *Id.* at 2, 26. The government distinguishes the duty to "indemnify" from a duty to "defend," where the contracts' indemnity provisions do not recite a duty to defend. *Id.*; ECF No. 13 at 2-5. Even if RACER's requests to recover the costs of the Michigan litigation are ripe, the government contends that RACER cannot receive indemnification because the underlying Michigan lawsuit concerns allegations of RACER's own negligence, actions for which RACER cannot be indemnified. ECF No. 6 at 17-18.

In RACER's view, the plain language of the contracts' indemnity provisions allows RACER to recover attorneys' fees and litigation costs as the Michigan case progresses. ECF No.

10 at 27-30. On the negligence point, RACER responds that absent a finding from the Michigan court that RACER was negligent, RACER is entitled to indemnification. ECF No. 10 at 30-33.

RACER has articulated plausible grounds on which to claim indemnification for its attorneys' fees and litigation costs stemming from the Michigan litigation.

### 1. Distinguishing duties

According to the government, the parties' contracts do not allow RACER to seek reimbursement of its litigation costs in the Michigan lawsuit because the indemnity provisions do not include a duty to defend. ECF No. 6 at 14. The government explains that the duty to defend "is a duty independent of the duty to indemnify against loss," which the contracts provide. *Id.* The government asserts that RACER cannot seek reimbursement based on the government's duty to indemnify because the underlying case is currently pending, and, unlike a case with a duty to defend, judgment or settlement in the underlying case is a prerequisite to asserting a right to indemnification. ECF No. 13 at 3-4 (quoting *Kansas City Power & Light Co. v. United States*, 143 Fed. Cl. 134, 144-45 (2019); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992); *Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 286 F.3d 1233, 1261 (11th Cir. 2002), *certified question answered sub nom. Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459 (Fla. 2005)). Thus, according to the government, RACER's claims are properly understood as duty-to-defend claims, and because the contracts lack that duty, RACER's claims must fail. ECF No. 6 at 14-15.

The government argues that the duty to defend arises "only if the indemnification clause explicitly imposes an obligation to defend." ECF No. 6 at 14. This duty is not presumed to accompany an explicit duty to indemnify, *id.* at 15 (quoting *Sweet v. United States*, 63 Fed. Cl. 591, 601 (2005)), and does not exist "simply because the agreements contain indemnification duties" (ECF No. 13 at 2). The government reads the contracts as lacking the duty to defend because the words of the indemnity provisions in both agreements do not use the words "defend" or "defense" in relevant places. ECF No. 6 at 15. In contrast, the agreements use the term "defend" elsewhere, and therefore, according to the government, the parties intentionally excluded a duty to defend from the indemnity provisions. *Id.*

RACER agrees that the government has no duty to defend and argues that its claims are properly understood as arising from the duty to indemnify, not any duty to defend. *See* ECF No. 10 at 27-30; Hearing Tr. 5:9-13. To RACER, the relevant question is whether the agreements' provisions encompass litigation costs. ECF No. 10 at 28. RACER relies on the plain language of both agreements' indemnification provisions, which expressly requires the government to indemnify RACER for "costs and expenses (including without limitation, reasonable attorneys' fees and expenses)." ECF No. 10 at 27 (quoting identical language in the master agreement, ECF No. 1-2 at 22, and ground lease, ECF No. 1-3 at 12). Relying on *Sweet*, RACER argues that even if the indemnity provisions did not expressly include attorneys' fees and litigation expenses, the courts presume that those expenses will be reimbursed. *Id.* at 29 (citing *Sweet*, 63 Fed. Cl. at 599). RACER adds that this court follows the general presumption that litigation expenses are reimbursable to "giv[e] effect to the very nature of indemnity, which is to make the party whole." *Id.* (citing *Kansas City Power & Light Co. v. United States*, 140 Fed. Cl. 791, 797 (2018) (quotation marks

omitted)). RACER also criticizes the nonbinding precedent that the government relies on, which involved different indemnity provisions and applied state law, as opposed to federal law, while federal law controls the contracts in this case. *Id.*

The briefs make clear that no federal case law binds the court on this issue. The cases present a fuzzy picture of the duties to indemnify and defend; their analyses use imprecise language and sometimes conflate the terms "indemnify" and "defend." The government is correct that the cases generally distinguish the terms, but they are less careful about what goes into each category. ECF No. 13 at 2-5; *see e.g.*, *Kansas City (2018)*, 140 Fed. Cl. at 796-98 (treating a scope-of-an-indemnity-provision analysis as distinct from whether a contract includes a duty to defend); *Kansas City (2019)*, 143 Fed. Cl. at 142-45 (same); *Sweet*, 63 Fed. Cl. at 598-601 (same).

And neither party acknowledges a third category: the duty to pay the costs of defending an underlying action "against the indemnitee if the judgment in that action establishes a liability within the scope of the indemnity obligation." Restatement (Second) of Judgments § 58 cmt. a (1982). That duty is distinct from the independent duty of "providing a defense to the indemnitee even when it appears possible or likely that the injured person's claim lies outside the scope of the indemnity obligation." *Id*. Further complicating the matter is that the third category—the duty to pay litigation costs—can be fulfilled either by providing the actual defense, making it look like the independent duty to defend, or by separately reimbursing the costs of that defense, making it look more like providing an indemnity that includes attorneys' fees and costs. *Id.*

Here, RACER is asking for the government to reimburse litigation costs under the terms of the indemnity provisions, which require the government (at some time) to pay attorneys' fees and litigation costs and expenses. ECF No. 1 at 1-2, 15-16; ECF No. 10 at 27-30. RACER is not alleging that the Postal Service owes RACER an independent duty to defend the Michigan action. Thus, even though the terms "defend" or "defense" are missing from the indemnity provisions, the court is not convinced that RACER is necessarily responsible for its own defense costs. The term "defend" or "defense" could also be missing because RACER is responsible under the contracts for providing its own defense.

The duty to reimburse litigation costs can arise when the terms of the agreement require it. Restatement (Second) of Judgments § 58 cmt. a (1982). Reading the indemnity provision here "in accordance with its express terms and the plain meaning," *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993), that duty is clear. Both indemnification clauses obligate the Postal Service to "indemnify and hold [RACER] … harmless from and against any and all losses, damages, claims, penalties, fines, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses)." ECF No. 1-2 at 22-23 [art. 3(a)] (master agreement); *see also* ECF No. 1-3 at 12 [art. 10.1] (ground lease) (The Postal Service "shall indemnify and hold [RACER] … harmless from loss, damage, claim, liability, and cost (including reasonable attorneys' fees and disbursements."). Attorneys' fees and expenses are expressly available to RACER under the agreements' terms.

This court's decision in *Sweet* does not undermine the contracts' express terms. Although the government is correct that an unwritten duty to defend does not presumptively accompany an explicit duty to indemnify, the cited portion of *Sweet* addressed an independent duty to defend, not

11

the duty to reimburse litigation costs in the underlying litigation. 63 Fed. Cl. at 601. *Sweet* stands for the proposition that an indemnitee is not entitled to reimbursement of the litigation costs arising from a case enforcing the agreement, such as this one, unless an independent duty to defend the underlying action, like the Michigan case, exists. *Id*. at 601-02 ("It is well established that an indemnitee is not ordinarily entitled to attorneys' fees and costs incurred in establishing the right to indemnification."); *id*. at 601. The costs of this suit—as opposed to the costs of the Michigan suit—are not in the focus of this case, at least not yet.

In fact, *Sweet* also held that the agreements at issue there required another party to reimburse for litigation expenses of the underlying lawsuit because the claims fell within the scope of the indemnity provision. 63 Fed. Cl. at 598-600. This finding aligns with the Second Restatement of Judgments. The parties' choice to include an independent duty to defend in their agreements, or not, does not affect whether RACER has stated a claim for relief for the reimbursement of litigation costs arising from the Michigan case.

### 2. Ripeness

Having determined that RACER's claims are best understood as ones for the reimbursement of litigation costs within the scope of the indemnity provision, the question is, does the government's ripeness argument apply to that distinct duty and preclude RACER from asserting a claim before the underlying Michigan lawsuit is resolved?

The government argues that a duty-to-indemnify claim "generally cannot be ascertained until the completion of litigation, when [the indemnitee's] liability is established, if at all." ECF No. 13 at 3 (quoting *Colony*, 647 F.3d at 253; also citing *United National*, 953 F.2d at 338). In support, the government relies on the 2019 *Kansas City* decision from this court, which held that, for statute-of-limitations purposes, a duty to indemnify accrued only when the underlying case settled. 143 Fed. Cl. at 144-45. The court explained that an independent duty to defend, in contrast, would have accrued at the time the underlying case was filed. *Id.* at 142-43.

I am not convinced that, in this case, a claim for the reimbursement of defense costs is unripe until the Michigan litigation is over. None of the decisions the government cites establish the moment that distinct duty becomes ripe. They instead address the distinction between the "duty to defend" and "duty to indemnify," do not distinguish the third duty to reimburse litigation costs, and at times conflate the three duties. *See Kansas City (2019)*, 143 Fed. Cl. at 142-45 (treating the duty to indemnify, or reimburse for the judgment, as the same as the duty to pay litigation costs, and comparing that broad understanding of the duty to indemnify to the independent duty to provide a defense); *Colony*, 647 F.3d at 252-53 (same); *United National*, 953 F.2d at 336-38 (addressing only the duty to indemnify against a judgment or settlement, not litigation costs).

In general, a claim is not ripe for adjudication if it relies on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quoting 13A Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* §3532 (1984)); *see Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1545-46 (9th Cir. 1994) (holding that the claim was ripe because Gemtel was harmed by a change in the city's labor policy and it did not matter that the exact terms of that policy had not yet been finalized). Once an indemnitee has incurred some costs, the case

may be ripe even if there may be additional future costs. *See City of Colton v. Am. Promotional Events, Inc.*, 614 F.3d 998, 1005 (9th Cir. 2010).

Whether a party is entitled to recover those future costs is not a question of ripeness; it is a merits question. *City of Colton*, 614 F.3d at 1005; *accord Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153-54 (5th Cir. 1993). "[N]either immediate liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is necessary … to establish a justiciable controversy." *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22-23 (3d Cir. 1985). The important thing is that the relevant events have occurred to make the claim ripe. *Id.* at 23.

Here, it is undisputed that RACER has incurred costs from litigating the Michigan suit, and it is undisputed that the Michigan suit continues to be litigated. Even though the parties do not have a final bill, litigation costs will continue to mount in Michigan. Resolution of RACER's claim does not depend on a hypothetical contingency, so RACER's claims are not unripe. *See Traillour Oil Co.*, 987 F.2d at 1153-54 ("[T]he ripeness inquiry focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." (citing 13A Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* § 3531.12 (1984))); *see also A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977) (examining "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated").

Even viewing the government's argument without the lens of the Second Restatement, the government does not carry its burden on a motion to dismiss. While *Kansas City (2019)* held that a duty-to-indemnify claim could not be adjudicated until after the underlying litigation was resolved, Judge Sweeney noted conflicting decisions. 143 Fed. Cl. 144 n.11 (citing *Kellogg Brown & Root Servs., Inc. v. United States*, 115 Fed. Cl. 168 (2014)). *Kansas City (2019)* decided a statute-of-limitations question; it did not analyze ripeness. It makes sense, at this stage of the litigation, to treat those concepts somewhat differently because the potential harms weigh differently. Here, if the court were to dismiss the case for being unripe, and a court were to address RACER's claims after the Michigan case has ended, depending on how long that takes, the government could plausibly argue—as it did in *Kansas City (2019)*—that at least some of RACER's claims for its litigation costs are time barred. Because neither *Kansas City (2019)* nor the decisions it cites (*see* 143 Fed. Cl. at 144-45) are binding on this court, and no binding authority precludes that argument, the safer course is not to dismiss on ripeness grounds at this stage. Instead, the better course it to proceed with the case and give the parties an opportunity to stay it pending a decision in the Michigan case, after which the total costs of the litigation and costs of the judgment will be determined. *See Terra Nova Ins. Co. Ltd. v. DiStefano*, 663 F. Supp. 809, 812-13 (D.R.I. 1987) (where ripeness was a matter of discretion, the court decided to stay rather than dismiss a case to avoid potential injustice to the plaintiff where a later case could be barred by the statute of limitations); *see also Sophos, Inc. v. RPost Holdings, Inc.*, 2014 WL 7409588, at *2 (D. Mass. 2014) (explaining that a motion to stay is not an admission that a matter is unripe nor does it affect the matter's ripeness).

Looking at the cases *Kansas City (2019)* relies on, RACER may, under federal law, assert a duty-to-indemnify claim while the Michigan action is pending. In *Sweet*, the plaintiffs sought litigation costs while the underlying suit was pending. 63 Fed. Cl. at 594-95. The fact that the underlying suit was pending did not prevent the court from holding that the plaintiffs were entitled

to the litigation costs arising from that litigation. *Id.* (citing *Sweet v. United States*, 53 Fed. Cl. 208, 226-27 (2002)).[3] Other cited cases use flexible language that does not foreclose reimbursement claims before the underlying claim is resolved. *See Colony*, 647 F.3d at 253 ("[A]n insurer's duty to indemnify *generally* cannot be ascertained until the completion of litigation, when liability is established." (emphasis added)); *see also VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011) ("[A]n insurer's duty to indemnify *typically* can be resolved only after the conclusion of the underlying action." (emphasis added)). Unlike here, the cases cited in *Kansas City (2019)* apply state, not federal, law. *See Colony*, 647 F.3d at 252 (applying Texas state law); *United National*, 953 F.2d at 337 (applying Illinois state law); *National Railroad*, 286 F.3d at 1261 (applying Florida state law). And only *Colony* arose on a motion to dismiss. 647 F.3d at 252; *see Kansas City (2019)*, 143 Fed. Cl. at 148 (summary judgment); *United National*, 953 F.2d at 336 (motion for judgment on the pleadings); *National Railroad*, 286 F.3d at 1260 (summary judgment).

As the government concedes, "[n]either the courts nor Congress have established a uniform Federal rule related to recovery of litigation expenses pursuant to an indemnity agreement." ECF No. 6 at 13. No binding authority dictates whether there must already be a final determination in an underlying case for an indemnification claim to be ripe. *See W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court."). Without binding precedent, "the court cannot state that [a] claim is foreclosed as a matter of law." *Kudsk Constr., Inc. v. United States*, 144 Fed. Cl. 446, 451-52 (2019). The court will not dismiss RACER's claims for indemnification of the defense costs as unripe.

### 3. Indemnity in a negligence action

The scope of the indemnity obligation determines whether RACER can assert that the government has a duty to pay defense costs in the Michigan litigation. The parties, however, disagree on the scope of the contracts' indemnity provisions and whether the Michigan suit's negligence allegations nullify any indemnification obligation.

The government argues that RACER's indemnification claims are barred under the terms of the ground lease. The ground lease says that the Postal Service will not provide indemnification for RACER's gross negligence or willful misconduct. The complainants in Michigan assert that RACER was "negligent, grossly negligent and/or negligent per se." ECF No. 6-1 at Appx6 [¶71]. According to the government, even *allegations* of negligence bar relief. ECF No. 6 at 16; ECF No. 13 at 6. The government adds that under *United States v. Seckinger*, 397 U.S. 203, 211-12 (1970), an indemnitee cannot recover for its own negligence absent "clarity from the face of the contract" that the parties intended such an outcome. ECF No. 6 at 18-23 (quoting *Seckinger*, 397 U.S. at 211-12).

---

[3] The government confuses the procedural history in *Sweet*. *See* ECF No. 13 at 4. While the district court had issued a judgment in the underlying case by the time this court decided the motion to dismiss and motion for partial summary judgment, execution of the judgment was stayed pending appeal, and the appeal was ongoing. *Sweet (2002)*, 53 Fed. Cl. at 218, 224. The plaintiffs in *Sweet* sought litigation costs arising from not only the district court case, but also the ongoing appeal. *Id.* at 224.

RACER responds that mere allegations of negligence in Michigan cannot bar its claim for the reimbursement of litigation costs under the contracts' indemnity provisions and that RACER has alleged sufficient facts to dispute whether it acted negligently in the Michigan suit. ECF No. 10 at 30-33.

Again distinguishing the independent duty to defend from the duty to pay for litigation costs, the government is likely correct that that the duty to defend arises regardless of the outcome of the underlying case, as long as "the nature of the claim alleged" and "the underlying facts in the complaint can be fairly read to support a claim covered by the indemnification provision." ECF No. 6 at 16 (quoting *National Railroad*, 286 F.3d at 1261). This view mirrors the Second Restatement's definition of the independent duty to defend. *See* Restatement (Second) of Judgments § 58 cmt. a (1982).

*National Railroad* also discusses the duty to pay for litigation costs, at issue here. In *National Railroad*, the Eleventh Circuit addressed an indemnity provision requiring General Electric to reimburse an indemnitee's damages, losses, and expenses (including attorneys' fees) only "*to the extent of and on account of* any negligent act or omission" by General Electric. 286 F.3d at 1238 (emphasis added). The Eleventh Circuit read that provision to mean that "any payment of attorneys' fees or other expenses [was] limited to situations where [General Electric] itself has been found to be negligent." *Id.* at 1262. The court distinguished the indemnity provision from an alternative, broader provision that would have required indemnification for any costs that *may* arise out of a negligent act or omission by General Electric. *Id.* Because General Electric was not found to be negligent, the court reasoned that General Electric was not required to reimburse the indemnitee's litigation costs. *Id.* Thus, *National Railroad* requires a close reading of the indemnity provision and allows for the possibility that a party may still be reimbursed for litigation costs when the underlying suit asserts negligence.

In *Lennar Corp. v. United States*, 168 Fed. Cl. 334 (2023), this court held that a broad indemnity provision, which provided a duty to reimburse any litigation costs or fees "arising out of *any claim* for personal injury or property damage ... that results from, *or is in any manner predicated upon*, the release or threatened release of any hazardous substance," must be read to cover any claim that alleged personal injury resulting from the release of hazardous substances, "not just those claims that successfully establish causation." *Id.* at 339, 347-48 (emphasis added). Although the indemnity provision in that case was statutorily established, the court interpreted the indemnity provision just as it would one established by contract, relying on its plain meaning.

Here, the ground lease requires the Postal Service to "indemnify and hold [RACER] … harmless from loss, damage, claim, liability, and cost (including reasonable attorneys' fees and disbursements) arising from … any damage to any property or injury to or death of any person arising from or in connection with the use of the Premises by [the Postal Service], *except such as is caused by the willful misconduct or gross negligence*" by RACER. ECF No. 1-3 at 12 [art. 10] (emphasis added). Although the master agreement's indemnity provision does not mention negligent conduct, the contracts incorporate one another and should be read together. ECF No. 1-2 at 33 [art. 12] (master agreement) ("This Agreement and the Exhibits attached hereto," which include the ground lease, "constitute the entire agreement."); ECF No. 1-3 at 1 (ground lease) ("This Lease is being executed in connection with the Master Agreement"); *id.* at 32 [art. 23.3] ("This Lease

15

and any documents executed … on or about the Effective Date … constitute the entire agreement.").

Applying *National Railroad's* logic, the ground lease's plain terms limit reimbursement of attorneys' fees in certain circumstances. Here, those circumstances arise only where harm "is caused" by RACER's willful misconduct or gross negligence. In other words, only when a court has determined that RACER's negligence caused the relevant harm is RACER foreclosed from reimbursement. Thus, under the plain language of the ground lease, *allegations* that RACER was negligent are not sufficient to bar RACER's claim for the reimbursement of litigation costs.

The Second Restatement leads to the same conclusion. The obligation to reimburse the indemnitee for losses depends on "whether the loss in question is within the terms of the indemnity obligation." Restatement (Second) of Judgments § 57 cmt. a (1982). The loss includes "the costs involved in litigating the question of the indemnitee's liability in cases where that liability is doubtful enough to justify litigation." *Id.* Here, the litigation costs RACER seeks may still fall within the scope of the contractual indemnity provision, because the question of RACER's negligence is uncertain enough to warrant litigation of the underlying case.[4]

There is a genuine issue of material fact regarding RACER's negligence for the conditions at the Metroplex that allegedly caused the Postal Service employees' injuries. On a motion to dismiss, the court must review all of the facts presented and construe them in the light most favorable to the plaintiff. *See Lindsay*, 295 F.3d at 1257. Even if the pleadings in the Michigan case can establish negligence for purposes of determining the scope of an indemnity, when considered alongside the facts alleged in the Inspector General's report that RACER cites (ECF No. 1-5), the Michigan case filings are not enough to preclude indemnity for the costs from the Michigan case. *See also* ECF No. 10 at 31-32 (explaining that the Inspector General's report calls into doubt whether RACER was negligent and suggests instead that the Postal Service's actions induced the Michigan lawsuit). Thus, RACER's liability is doubtful enough to justify litigation. A claim for litigation costs is not precluded as a matter of law, and RACER's complaint cannot be dismissed for failure to state a claim.

**D.    Surreply**

RACER moved to file a surreply in opposition to the government's motion to dismiss. The "standard for granting a leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Ute Indian Tribe of Uintah & Ouray Indian Rsrv. v. United States*, 145 Fed. Cl. 609, 617 n.6 (2019) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)). RACER must show that the government "raised new arguments that were not included in the original motion." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001). The court has discretion to grant

---

[4] Of course, this point supports the government's argument that this suit is not ready for adjudication because there are facts that need to be determined in the Michigan litigation before the court can decide any government liability for an ultimate judgment in that case. But as discussed above, those questions go to the merits, not the ripeness of the case.

16

or deny leave to file a surreply. *Id*. A surreply is improper when it serves as nothing more than "an effort to get the last word." *Am. Safety Council, Inc. v. United States*, 122 Fed. Cl. 426, 431 (2015).

RACER contends that the government raised five new arguments in its reply. ECF No. 14 at 1-2. The highlighted arguments are not novel but are related to arguments previously raised in the government's motion to dismiss that RACER had an opportunity to rebut. *Compare* ECF No. 6 *with* ECF No. 13. The court denies RACER's motion for leave to file a surreply.

### III. Conclusion

For the reasons stated above, the government's motion to dismiss is **denied**. RACER's motion for leave to file a surreply is **denied**. The parties shall submit a joint preliminary status report by the deadline imposed by the Rules of the Court of Federal Claims. In addition to the matters that the rules require the parties to address, the parties shall provide their positions and a brief explanation of 1) whether this case should be stayed; 2) if so, whether the stay should begin before or after discovery or sometime in the middle; 3) whether the stay should remain in place until the issuance of the appeals board's decision, a decision in the Michigan lawsuit, or both; and 4) at what point in the Michigan lawsuit the stay should be lifted, whether after a trial, after a final decision by the trial court, after all available appeals are exhausted, or at another time.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge